UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KATHRYN L. BROOKS, | : | Case No. 3:19-cv-78 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

I. **Introduction**

Plaintiff Kathryn L. Brooks brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on February 18, 2016, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #3).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since June 4, 2015. She was fifty-six years old at that time and was therefore considered a person of "advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). She has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[1]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #3, *PageID* #s 39-54); Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #10). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV.  **The ALJ's Decision**

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since June 4, 2015.

- Step 2: She has the severe impairments of lumbar and thoracic degenerative disc disease, mild cervical degenerative disc disease, pulmonary nodules, residuals of retinal detachment surgery, right foot tendinitis, hypertension, and right upper extremity median neuropathy.

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work …. [Plaintiff] is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. [She] cannot climb ladders/ropes/scaffolds. She is limited to occasionally climbing ramps/stairs, stooping, kneeling, crouching, and crawling. [Plaintiff] is capable of frequent balancing. She is limited to occasional use of foot controls on the right. [She] is limited to frequent overhead reaching, bilaterally. She is limited to frequent handling with the right upper extremity. [She] should have no more than occasional exposure to temperature extremes, humidity, fumes, odors, dusts, gases, and poorly ventilated areas. [Plaintiff] cannot

4

> work around unprotected heights or dangerous machinery. She should have no work requiring the need for depth perception."

> Step 4: She is capable of performing her past relevant work as a billing clerk, order clerk, and secretary.

(Doc. #3, *PageID* #s 39-54). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 54.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ erred in failing to recognize her mental health impairments—anxiety and depression—as severe impairments; failing to properly evaluate the medical evidence; and failing to consider vocational expert testimony. Additionally, Plaintiff asserts that the ALJ incorrectly created and relied on a residual functional capacity (RFC) that produced available work under "Prong Four."

The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. **Mental Impairments**

Plaintiff contends that the ALJ failed to consider any limitations resulting from her mental impairments in his residual functional capacity assessment. According to Plaintiff, "if the mental health impairments had been properly found to be severe, then a residual functional capacity would have shown [Plaintiff] to require a limitation of routine work, with short cycle tasks and no strict quotas." (Doc. #8, *PageID* #s 1639-40).

At step two of the five-step sequential evaluation process, the ALJ considers the "medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4). "An impairment or combination of impairments is not severe if it does not significantly limit

5

[the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1521(b). *Id.* If the claimant does not have an impairment or combination of impairments that are severe and meet the duration requirement,[2] then the claimant is not disabled. *Id.*

The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted). The Court explained, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis." *Id.* (citations omitted). However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

ALJ Hockensmith found at Step Two that Plaintiff's adjustment disorder with depression was a non-severe impairment because it does not cause more than minimal limitations on her ability to perform basic mental work activities. Moreover, he did not include any mental limitations in his assessment of Plaintiff's residual functional

---

[2] "Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

capacity. Substantial evidence supports the ALJ's findings. The ALJ reasonably relied of the opinions of examining consultant Dr. Barwick and record-reviewing psychologists Dr. Fernandez and Dr. Delcour. Dr. Fernandez and Dr. Delcour opined that Plaintiff's mental health impairment—an affective disorder—was non-severe and found that she had no more than a mild restriction of activities of daily living, mild difficulties maintaining social functioning, and mild difficulties maintaining concentration, persistence, or pace. (Doc. #3, *PageID* #s 180, 209-10). Dr. Barwick diagnosed adjustment disorder with depressed mood. *Id.* at 888. She opined that Plaintiff was functioning in the average range of intelligence and had strong abstract reasoning skills. *Id.* at 889. Although Plaintiff reported to Dr. Barwick that she has been struggling with attention and concentration, she recalled five digits forwards and backwards and three out of three words after brief delay. She calculated serial sevens and serial threes without error and she had no difficulty mentally calculating basic arithmetic. She interacted appropriately with Dr. Barwick and stated that she has good relationships with family and denied a history of emotional extremes or outbursts. Plaintiff reported that she has had difficulty adjusting to her health conditions and physical limitations. She is still interested in leisure activities such as crocheting and watching television. Dr. Barwick opined "[t]here is little evidence to suggest she would have great difficulty adjusting to changes within the workplace." *Id.*

Additionally, the ALJ's consideration of the Paragraph B criteria further supports his conclusion that Plaintiff's mental impairments are non-severe. For instance, he found that Plaintiff had a mild limitation in understanding, remembering, and applying

information. *Id.* at 44. The ALJ noted that the consultative examiner did not indicate any cognitive deficits. Dr. Hall, a neurologist, observed that Plaintiff scored perfectly on a test of mental status. *Id.* at 1043. Further, Dr. Foster indicated that neuropsychological testing showed that Plaintiff has no cognitive impairment and only mild inefficiencies in her memory. *Id.* at 1055. Next, the ALJ found that Plaintiff had mild limitations in interacting with others. The ALJ noted that Plaintiff did not testify to significant difficulties getting along with others and the record does not contain evidence of a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. The ALJ determined that Plaintiff has no limitation in concentrating, persisting, or maintaining pace. The ALJ noted that although Plaintiff reported difficulties with concentration, Dr. Barwick, an examining psychologist, did not observe any. Further, in October 2017, Plaintiff's treating physician, Dr. Vosler, noted that Plaintiff reported anxiety, but her symptoms *do not* include difficulty concentrating or excessive worry. *Id.* at 1530. Last, the ALJ found that Plaintiff has no limitation in adapting or managing oneself. *Id.* at 45. He explained that there is no indication that Plaintiff is unable to behave in an emotionally stable manner or to relate predictably in social situations.

  Together, this evidence supports the ALJ's determination that Plaintiff does not have any severe mental impairments and his conclusion not to include any mental limitations in his residual functional capacity assessment.

## B. Medical Opinions

Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence—specifically, the opinion of Plaintiff's treating physician, Mark S. Vosler, D.O.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p,

9

1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

The ALJ assigned the opinions of Plaintiff's treating physician, Dr. Vosler, "little weight" and gave several reasons for discounting them. (Doc. #3, *PageID* #44). The ALJ found that Dr. Vosler's opinion was internally inconsistent. Specifically, Dr. Vosler opined that Plaintiff had occasional limitations interacting with the public but then also noted that she has no social interaction limitations. *Id.* at 880.

Further, Dr. Vosler did not document significant deficits in his treatment notes to corroborate the extreme limitations he assessed. The record supports the ALJ's conclusion. Dr. Vosler's treatment notes from September 2015 show Plaintiff was alert, cooperative and not in acute distress. *Id.* at 800. In 2016, he noted at several appointments that she was alert and oriented during examinations and her mental status was "normal." *Id.* at 776-78, 1555, 1559, 1564, 1568. In 2017, Plaintiff reported fatigue to Dr. Vosler but she denied experiencing trouble with memory or concentration. *Id.* at 1530-37. At several appointments between September 2017 and February 2018, Dr. Vosler indicated that Plaintiff's "mood and affect are described as … normal. *Id.* at 1520, 1528, 1532-33, 1536, 1540. Likewise, between August 2017 and February 2018, upon examination, she was alert, cooperative, and oriented "X4." *Id.* at 1520, 1528, 1532-33, 1536, 1540, 1544, 1551. Indeed, very few of Dr. Vosler's treatment notes mention Plaintiff's mental or difficulties.

10

In addition, Dr. Vosler's opinions are not consistent with neuropsychological testing. Plaintiff "scored perfectly" on a 2016 test of mental status conducted by Dr. Hall. (Doc. #3, *PageID* #43) (citing *PageID* #s 1041-43). Plaintiff was awake, alert, aware, and exhibiting "clear" mental status. *Id.* And, at the neuropsychological evaluation performed by Dr. Foster, Plaintiff demonstrated "no objective cognitive impairment" during testing and only "mild inefficiencies in the memory of a word list and semantic fluency." *Id.* at 43. The ALJ also pointed out that Dr. Foster cautioned that Plaintiff had only put forth "slightly variable effort, suggesting the results were an "underestimate of her current abilities." *Id.* at 43, 1054.

Last, the ALJ observed that Dr. Vosler's opinions were inconsistent with Plaintiff's reports of activities of daily living to the consultative examiner. Specifically, she said she was able to care for her pets, manage her finances, purchase necessities at the store, read, and crochet. *Id.* at 44. She also indicated on the function report that she washes clothing, does light housework such as dusting, picking up after her husband, and washing dishes. *Id.* at 53. Together, these reasons constitute "good reasons" for discounting Dr. Vosler's opinions.

Instead, the ALJ assigned "great weight" to the opinions of consulting psychologist Dr. Barwick and record-reviewing psychologists Dr. Fernandez and Dr. Delcour. He provided valid reasons for doing so and substantial evidence supported his reasons. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("[s]tate agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). For example,

11

the ALJ explained that their opinions—that Plaintiff had no severe mental impairments and no limitations—were consistent with the medical record that showed intermittent, conservative treatment for depression. (Doc. #3, *PageID* #s 43-44). Further, their opinions were consistent with neuropsychological testing that showed no cognitive deficits. The ALJ noted that while Plaintiff's memory may have decreased from prior optimal levels, she had no more than mild inefficiency. *Id.* Substantial evidence supports the ALJ assigning "great weight" to these opinions. *See Downs v. Comm'r of Social Sec.*, 634 F. App'x 551, 554 (6th Cir. 2016) (no error in relying on record-reviewers' opinion over the opinions of treating physician because when "the ALJ provided sound reasons—supported by substantial evidence ….").

### C. Vocational Expert

The ALJ asked the vocational expert (VE) to consider whether an individual with Plaintiff's vocational profile and residual functional capacity could perform her past relevant work. (Doc. #3, *PageID* #s 84-85). The VE testified that an individual with the specified characteristics was able to perform Plaintiff's past work of a billing clerk, order clerk, and secretary. *Id.* at 85. Based on the VE's testimony, the ALJ reasonably concluded that Plaintiff was capable of performing some of her past relevant work. *Id.* at 53-54; *see Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428-29 (6th Cir. 2014) ("A vocational expert's testimony in response to an accurate hypothetical represents substantial evidence that the claimant has the vocational qualifications to perform specific jobs.") (citing *Smith v. Halter,* 307 F.3d 377, 378 (6th Cir. 2001)*Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ was not

required to consider the VE's response to other hypotheticals or include additional limitations in his RFC assessment because they were not supported by the record. Accordingly, given that the VE testified that Plaintiff could perform her past relevant work despite her supported limitations, the ALJ reasonably concluded that Plaintiff was not under a disability within the meaning of the Act.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

Date:  March 30, 2020              *s/Sharon L. Ovington*
                                    Sharon L. Ovington
                                    United States Magistrate Judge